IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:08-CV-191-H

C. JOHNSON SHEFFIELD CPA, PC; )
C. JOHNSON SHEFFIELD AND )
WIFE, EMILY F. SHEFFIELD )
D/B/A/ PAPE ENTERPRISE, )
  )
    Plaintiffs, )
  )
  ) **ORDER**
    v. )
  )
  )
WEST AMERICAN INSURANCE )
COMPANY, )
  )
    Defendant. )

This matter is before the court on defendant's motion for summary judgment and motion to exclude testimony and reports of plaintiffs proffered experts, as well as plaintiffs' motion for sanctions. Appropriate responses and replies have been filed, and the time for further filings has expired. These matters are ripe for adjudication.

### BACKGROUND

C. Johnson Sheffield CPA, PC ("plaintiff") insured a commercial building and its contents located on Front Street in Warsaw, North Carolina under a Businessowner's Policy with defendant West American Insurance Company. Following two storms

1

(Tropical Storm Ernesto on August 31, 2006 and a Nor'easter on November 22, 2006), plaintiffs submitted claims to defendant for damage to the roof and resulting interior damage. Plaintiffs contended that the roof needed replacing. After investigating the claims, defendant issued a payment to plaintiffs for roof repairs caused by flying debris and resulting interior damage from the first storm, but as to the second storm claim, defendant denied the alleged roofing damage portion and paid only for the interior damage.

Plaintiffs filed the complaint in this matter on October 9, 2008 in Duplin County Superior Court alleging (1) Breach of Contract; (2) Unfair and Deceptive Trade Practices pursuant to North Carolina General Statute § 75-1.1; and (3) Unfair and Deceptive Trade Practices pursuant to North Carolina General Statute §58-63-15. Defendant removed the matter to this court on November 14, 2008. Plaintiffs filed an amended complaint on March 27, 2009, which alleges the same causes of action. Now before the court are the motions detailed supra.

According to plaintiff, the polyurethane foam roof was approximately ten years old, and there had been no leaks prior to Tropical Storm Ernesto on or about August 31, 2006. The day following the storm, plaintiff and/or his staff discovered interior water damage from a roof leak or leaks. On or about

2

September 1, 2006, plaintiff contacted the defendant through his employee, Tammy Kirby, in order to file a claim for damage.

Defendant sent independent insurance adjuster Donald Rice, employed by James C. Greene independent adjusting company, to inspect the premises on behalf of defendant. Mr. Rice physically inspected the roof and determined a section of the polyurethane foam roof had been punctured by flying debris, a fan blade. Rice determined that the location of interior damage matched the area of damage from the puncture. He also determined that the punctured section of the roof was the only section of the roof damaged by wind. Defendant notes specifically that Mr. Rice did not see any evidence of damage to the roof caused by wind uplift. Plaintiffs note that Rice did no further testing or inspection to determine if there was further wind damage and did not test or inspect for wind uplift damage. Plaintiffs contend that Mr. Rice and defendant should have determined that Tropical Storm Ernesto damaged the entire roof, requiring it to be completely removed and replaced.

Based on his inspection and conclusions, Mr. Rice prepared an estimate for $2,729.09 to settle the claim, which included money to repair the puncture in the roof and the interior damage existing at the time. Defendant reduced the estimate by plaintiffs' $1,000 deductible and $54.72 in depreciation and

3

issued a check for $1,672.37 to the plaintiffs, which the plaintiffs never negotiated.

On November 22, 2006, another rain storm affected the Warsaw area. This storm resulted in more extensive water intrusion, although it is not clear whether the damage to the roof was caused during the first storm or the second storm. Plaintiff again contacted the defendant and this time, defendant sent Senior Field Adjuster J. "Mac" Tilley to inspect the building. Mr. Tilley inspected the interior of the building, but did not bring a ladder of sufficient length to enable him to physically inspect the roof.

Instead of inspecting the roof himself, Mr. Tilley asked plaintiffs to obtain an estimate of repair from a roofing contractor they would like to use. Plaintiffs submitted an initial estimate of $50,625, maintaining that the entire roof needed to be replaced. Defendant, through Tilley, contacted the plaintiffs' contractor directly, who immediately reduced the estimate to $28,800, which was still too high by industry standards according to defendant.

Because Tilley found the plaintiffs' contractor's estimate to be suspicious, Tilley asked another contractor to inspect plaintiffs' roof. The independent roofing contractor told Tilley that he did not believe the plaintiffs' roof damage was

4

caused by wind, so Tilley retained an independent engineering firm Forensic Engineering, Incorporated ("FEI"), to inspect the building. FEI sent engineer Chad Bible to inspect the building. Following Bible's inspection, FEI determined that the leaking roof was not caused by wind but rather by degradation and age.

After receiving FEI's opinion, defendant estimated $1,823.55 in covered damages related to interior ceiling damage and denied the roof replacement claim as a non-covered loss. Defendant sent plaintiffs a check for this amount. This check was not negotiated either.

The central issue in this suit is the cause of the roof leaks and whether such cause is a covered loss under plaintiff's policies. Tom Preston, the contractor whose company originally installed plaintiffs' polyurethane foam roof, testified in his deposition that the roof was constructed in 1988 and had a ten-year warranty. Preston explained in his deposition that after 10 years, a polyurethane foam roof needs to be re-coated and if not, may start to deteriorate due to exposure to the sun's ultraviolet rays, normal wear and tear, and weather. Additionally, Preston testified that in 1996 his company repaired sections of the roof following damage incurred during Hurricane Fran and "recoated the whole building in 1996." (Preston Dep. at 13-14.) Additionally, in 1998, Preston prepared

5

a proposal to "redo" the whole roof by installing a new polyurethane foam roofing system on the entire building. (See Preston Dep. at 22-23.; Haake Aff. At Ex. 1 [DE #41-1].) However, the roof was not replaced at that time.[1]

Plaintiffs have submitted the names of three individuals who plan to offer expert testimony as to the cause of the roof damage. Defendant has filed a motion to exclude the testimony of these "experts," arguing that they do not meet the requisite standard for admissibility pursuant to Rule 702 of the Federal Rules of Evidence. Defendants have also filed a motion for summary judgment. Additionally, plaintiffs have filed a motion for sanctions, arguing that defendant's motion for summary judgment as well as defendant's motion to exclude the testimony of plaintiffs' experts are frivolous.

## COURT'S DISCUSSION

### I. Standard of Review

Summary judgment is appropriate pursuant to Fed. R. Civ. P. 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v.

---

[1] The record indicates that plaintiff submitted a claim to his former insurance company related to roof damage in 1998 following a tornado. It appears the 1998 proposal from Mr. Preston was requested during the 1998 claim process. As a result of that claim, the insurance company agreed to pay for appropriate repairs, not for the entire roof to be replaced.

6

Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Summary judgment is not a vehicle for the court to resolve disputed factual issues. Faircloth v. United States, 837 F. Supp. 123, 125 (E.D.N.C. 1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. Anderson, 477 U.S. at 249.

In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. Accordingly, the court must

7

examine "both the materiality and the genuineness of the alleged fact issues" in ruling on this motion. Faircloth, 837 F. Supp. at 125.

## II. Analysis

### A. Motion to Exclude Expert Testimony

Defendant moves the court to exclude the testimony of plaintiffs' proffered expert witnesses on the grounds that their testimony does not meet the standards of admissibility of expert testimony set forth in Rules 702 and 703 of the Federal Rules of Evidence and by the United States Supreme Court in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).

Under Daubert and Rules 702 and 703 of the Federal Rules of Evidence, federal judges are to act as gatekeepers to determine whether an expert's opinion is reliable and whether his testimony will be helpful to the jury. Daubert v. Merrell Dow Pharms., 509 U.S. 579, 589 (1993). The proponent of the expert bears the burden of proving admissibility.

The Supreme Court noted four non-exhaustive factors that this court may use to determine the reliability of scientific expert testimony: (1) whether a theory has been tested; (2) whether it has been subject to peer review; (3) whether a

8

technique has a potential rate of error or standard operating procedures; and (4) whether a theory is generally accepted within the scientific community. Id. These four factors do not need to be applied in all cases; the trial judge has "considerable leeway" in an individual case to determine "whether particular expert testimony is reliable." Kumho Tire Co., 526 U.S. at 152 (1999).

Defendant argues that the opinions of plaintiffs' proffered experts, Jeff Foster, P.E., Chris Watkins and Norman Campfield, are unreliable and wholly speculative because, among other things: (1) their opinions are based on speculative and unsupported assumptions, not facts, data or scientific knowledge; and (2) their opinions are not based on reliable principles or scientific methods.

The court finds that defendant has not shown that the testimony that would be provided by these witnesses would be totally speculative or wholly irrelevant. See, e.g., Bureau v. State Farm, 129 Fed. Appx. 972 (6th Cir. 2005). The court finds that under the particular circumstances of this case and in view of the type of testimony at issue, these gatekeeping matters are more properly addressed at the trial of this matter, where the court may hear from the purported experts to determine whether they are qualified pursuant to Federal Rules of Evidence 702 and

104. Therefore, defendant's motion to exclude is DENIED WITHOUT PREJUDICE.

### B. Motion for Summary Judgment

Having denied defendant's motion to exclude without prejudice, the court is compelled to find there remain genuine issues of material fact which preclude entry of summary judgment in this matter. The central issue in this case is the cause of the roof damage as well as interior damage to the building owned by plaintiffs. To answer this question, the court has to hear from various witnesses[2], evaluate facts, and determine the credibility of such testimony. These are questions for the jury, not the court. Therefore, defendant's motion for summary judgment is DENIED.

### C. Motion for Sanctions

The court has reviewed plaintiffs' motion for sanctions. The court finds this motion to be without merit. The court understands plaintiffs' concerns, but does not find defendant's motions to frivolous. Although there are issues of fact which preclude summary judgment in this matter, the court finds that

---

[2] The court notes that even if the potential expert witnesses are found not to be qualified as experts, they may still be able to testify as to what they saw during a visual inspection of the roof.

10

defendant's motions are reasonable in these circumstances. Therefore, plaintiffs' motion for sanctions is DENIED.

III. Settlement Conference

On the court's own motion, and pursuant to Local Civil Rule 101.2, EDNC, and Rules 16 and 53 of the Federal Rules of Civil Procedure, the court ORDERS a court-hosted settlement conference.

United States Magistrate Judge David W. Daniel is hereby appointed as settlement master. Magistrate Judge Daniel is directed to meet with the parties and supervise negotiations, with an aim toward reaching an amicable resolution of the issues. Magistrate Judge Daniel is given full authority to establish such rules as he may desire, which shall be binding upon the parties and their counsel during the course of the conference. The conference will be conducted at a time and place selected by Magistrate Judge Daniel upon notice to the parties.

## CONCLUSION

For the foregoing reasons, defendant's motion to exclude is DENIED WITHOUT PREJUDICE [DE #35], defendant's motion for summary judgment is DENIED [DE #37], and plaintiff's motion for

11

sanctions is DENIED [DE #55]. Additionally, the court orders a court-hosted settlement conference as detailed supra.

This 27TH day of July 2010.

/s/ Malcolm J. Howard
Malcolm J. Howard
Senior United States District Judge

At Greenville, NC
#26